No. _____

---

# In the United States Court of Appeals for the Federal Circuit

---

IN RE: CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS OPERATING, LLC, SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, TIME WARNER CABLE ENTERPRISES, LLC, SPECTRUM GULF COAST, LLC, AND CHARTER COMMUNICATIONS LLC

*Petitioners.*

---

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas
Case No. 2:23-CV-00059-JRG
Hon. Rodney Gilstrap, United States District Judge

---

## PETITION FOR A WRIT OF MANDAMUS

---

Daniel Reisner
Elizabeth A. Long
**Arnold & Porter Kaye Scholer LLP**
250 West 55th Street
New York, New York 10019
Tel.: (212) 836-8000
Fax: (212) 836-8689

*Attorneys for Petitioners
Charter Communications, Inc., Charter
Communications Operating, LLC,
Spectrum Management Holding
Company, LLC, Time Warner Cable
Enterprises, LLC, Spectrum Gulf Coast,
LLC, and Charter Communications LLC*

July 1, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Charter Communications, Inc. et al |
| **Filing Party/Entity** | Charter Communications, Inc. et al |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/01/2024

Signature: /s/ Daniel Reisner

Name: Daniel Reisner

**FORM 9. Certificate of Interest**

**Form 9 (p. 2)**
**March 2023**

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Charter Communications, Inc. | N/A | Liberty Broadband Corporation |
| Charter Communications Operating, LLC | N/A | N/A |
| Spectrum Management Holding Company, LLC | N/A | N/A |
| Time Warner Cable Enterprises, LLC | N/A | N/A |
| Spectrum Gulf Coast, LLC | N/A | N/A |
| Charter Communications LLC | N/A | N/A |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Carson Dean Anderson (Arnold & Porter) | David S. Benyacar (Arnold & Porter) | Deron R. Dacus (The Dacus Firm, PC) |
| Dina M. Hayes (Arnold & Porter) | Marc A. Cohn (Arnold & Porter) | Melissa A. Brown (Arnold & Porter) |
| Robert W. Stout (Arnold & Porter) | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>NOTICE OF RELATED CASE INFORMATION</u>

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Charter Communications, Inc. et al |
| **Filing Party/Entity** | Charter Communications, Inc. et al |

**Instructions:** Do not duplicate information.  The notice must only be filed at the time of filing the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  *See* Fed. Cir. R. 47.5(b).  Attach additional pages as needed.  This notice must not be included in a motion, petition, related response, or brief; please only include the Certificate of Interest (Form 9) in those documents.

1. **Related or prior cases.** Provide the case title, case number, and originating tribunal for each case.  Fed. Cir. R. 47.5(b)(1).

Iarnach Technologies Ltd. v. Charter Communications, Inc. et al, 2-24-cv-00230-JRG (E.D. Texas)

Adaptive Spectrum and Signal Alignment, Inc. v. Charter Comms., Inc., et al, 2-24-cv-00124-JRG (E.D. Tex.)

☐    Additional pages attached

FORM 9A. Notice of Related Case Information

2. **Names of all parties involved in the cases listed above.** Do not duplicate the names of parties. Do not relist the case information. Fed. Cir. R. 47.5(b)(2)(A).

Iarnach Technologies Ltd.

Charter Communications Inc.

Charter Communications Holding Company, LLC

Charter Communications Operating, LLC

Spectrum Management Holding Company, LLC

Spectrum Gulf Coast, LLC

Adaptive Spectrum and Signal Alignment, Inc.

☐ Additional pages attached

3. **Names of all law firms, partners, and associates in the cases listed above.** Do not duplicate the names of law firms, partners, and associates. Do not relist case information and party names. Fed. Cir. R. 47.5(b)(2)(B).

Alavi & Anaipakos PLLC (Amir H. Alavi, Christopher Ryan Pinckney, Demetrios Anaipakos, Masood Anjom, Michael Dean McBride, Steven Thomas Jugle); Heim, Payne & Chorush LLP (Alden Harris, Blaine Larson, Eric Enger, Lily Glick, Robert Allan Bullwinkel, Michael F Heim); Ward, Smith & Hill, PLLC (Andrea Leigh Fair); Fenwick & West LLP (Christopher L. Larson, J. David Hadden, Saina Shamilov); The Dacus Firm, PC (Deron Dacus); Kramer Alberti Lim & Tonkovich LLP (Robert Kramer, David Alberti, Russell Steven Tonkovich, Sal Lim); Gillam & Smith, LLP (Melissa Richards Smith); Quinn Emanuel Urquhart & Sullivan LLP (David Eiseman, IV, Dawn David, Deepa Acharya, Trevor John Quis, Xuemeng Wang)

☐ Additional pages attached

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/01/2024

Signature:  /s/ Daniel Reisner

Name:  Daniel Reisner

# TABLE OF CONTENTS

**Page**

I.    RELIEF SOUGHT ......................................................................... 1

II.   ISSUE PRESENTED .................................................................... 1

III.  INTRODUCTION ......................................................................... 1

IV.  FACTS NECESSARY TO UNDERSTAND THE ISSUES
PRESENTED ................................................................................ 8

    A.    CCI and CCO Maintain Corporate Separateness From the LLC
Subsidiaries ........................................................................ 8

    B.    CCI Is the Manager of CCO and the LLC Subsidiaries ..................... 10

    C.    CCI and CCO Do Not Have Any Employees and Do Not Own or
Lease, or Maintain and Operate, Property in the District ................. 12

    D.    CCO Does Not Control the LLC Subsidiaries' Finances ................... 13

    E.    CCI and CCO Do Not Reside or Have a Physical Presence in the
District ............................................................................... 13

    F.    Procedural History ................................................................ 14

V.   REASONS THE WRIT SHOULD ISSUE .................................... 16

    A.    The Right to a Writ Is Clear and Indisputable ..................... 16

        1.    The District Court Relied on an Erroneous Standard and
Erroneous Factual Findings to Impute the Presence of
Spectrum Gulf to CCI and CCO .............................. 17

    B.    The Other Mandamus Factors Are Satisfied ....................... 25

VI.  CONCLUSION ........................................................................... 26

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andra Group, L.P. v. Victoria's Secret Stores, LLC.*,
  6 F.4th 1283 (Fed. Cir. 2021) ................................................................ 5, 6, 18, 24

*Bd. Of Regents v. Medtronic PLC*,
  17-cv-0942, 2018 WL 4179080 (W.D. Tex. July 19, 2018) .................................6

*Celgene Corporation v. Mylan Pharmaceuticals Inc.*,
  17 F.4th 1111 (Fed. Cir. 2021) ...................................................................... *passim*

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004).............................................................................................16

*In re Charter Comms., Inc.*,
  2023-136, 2023 WL 5688812 (Fed. Cir. Sept. 5, 2023).......................... 2, 15, n.1

*In re Cray Inc.*,
  871 F.3d 1355, 1360 (Fed. Cir. 2017) .......................................................... 16, 25

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) ..........................................................................25

*In re Micron Tech. Inc.*,
  875 F.3d 1091 (Fed. Cir. 2017) ..........................................................................16

*In re Monolithic Power Sys., Inc.*,
  50 F.4th 157 (Fed. Cir. 2022) ............................................................................n.1

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ..............................................................................25

*Interactive Toybox, LLC v. Walt Disney Co.*,
  1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018).............. 20, 24

*IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*,
    11-cv-0575, 2012 WL 13012617 (E.D. Tex. Sept. 26, 2012) .................. 7, 21, 22

*Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*,
    17-cv-2206, 2020 WL 5095499 (E.D. Pa. Aug. 28, 2020)...................................11

*Nat'l Steel Car Ltd. v. The Greenbrier Cos., Inc.*,
    19-cv-00721, 2020 WL 42889388 (W.D. Tex. July 27, 2020) ...................... 6, 18

*Parallel Network Licensing LLC v. Arrow Elecs., Inc.*,
    21-cv-0714, 2022 WL 1597364 (E.D. Tex. May 19, 2022).................................21

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1964)...........................................................................................16

*Soverain IP, LLC v. AT&T, Inc.*,
    17-cv-0293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017) ........................ *passim*

## Statutes

28 U.S.C. §1400...................................................................................................16

Del. Code Ann. tit. 6, § 18-101............................................................................11

Del. Code Ann. tit. 6, § 18-402............................................................................22

## Other Authorities

Fed. Prac. & Proc. § 3823 ....................................................................................18

## I.    <u>RELIEF SOUGHT</u>

Petitioners Charter Communications, Inc. ("CCI"), Charter Communications Operating, LLC ("CCO"), Time Warner Cable Enterprises LLC, Spectrum Management Holding Company, LLC ("SMHC"), Spectrum Gulf Coast, LLC ("Spectrum Gulf"), and Charter Communications, LLC ("CC LLC") (together, "Petitioners") respectfully seek a writ of mandamus directing the District Court for the Eastern District of Texas to dismiss the case for improper venue as it relates to CCI and CCO pursuant to Federal Rule of Civil Procedure 12(b)(3).

## II.    <u>ISSUE PRESENTED</u>

1.     Whether the district court misstated the applicable legal standard for imputation and reached a patently erroneous result when it found that venue under 28 U.S.C. § 1400(b) was proper in the Eastern District of Texas solely on the basis that a separate and distinct subsidiary and its parent operates as a single enterprise.

## III.    <u>INTRODUCTION</u>

For the second time in less than 13 months the same district court disregarded well-established case law concerning corporate forms, ruling that a parent can be considered the alter ego of its subsidiary so long as they operate as a single coordinated entity—even if all the indicia of corporate separateness reflect the operation of separate entities.  CCI sought mandamus on this issue in a prior case brought against it by Entropic Communications, LLC but was denied because, this Court held, it merely presented "a record-specific dispute." *In re Charter Comms.,*

*Inc.,* 2023-136, 2023 WL 5688812, at *2 (Fed. Cir. Sept. 5, 2023).[1] CCI was then forced to litigate that case in an improper forum through the eve of trial before settling it the night before jury selection. As this mandamus petition demonstrates, the same dispute has already arisen many times and will continue to arise repeatedly because would-be plaintiffs file large numbers of suits in the forum, encouraged by the district court's willingness to disregard corporate forms when determining venue.

Denial of CCI's prior mandamus has already resulted in patent plaintiffs suing CCI exclusively in the Eastern District of Texas during the past two years, including three cases since the denial of mandamus.[2] And prior to that denial, CCI had been

---

[1] On May 3, 2023, in *Entropic Communications, LLC v. Charter Communications, Inc.,* 2:22-cv-00125-JRG (E.D. Tex.) ("*Entropic*") the district court denied CCI's motion to dismiss for improper venue ("*Entropic* Order"). Appx12-Appx31. CCI petitioned for mandamus, asking this Court to correct the district court's finding that "the in-district activities of CCL and SGC 'may be properly imputed to' CCI" and "explaining that CCI 'unabashedly holds itself out to the world as a single enterprise' and the lines between the different corporations were simply 'legal formalities.'" *In re Charter,* 2023 WL 5688812, at *1. But the Court declined to intervene at that juncture, stating that the "petition does not raise 'the type of broad, fundamental, and recurring legal question' or other considerations that might warrant mandamus review. *Id.* at *2 (quoting *In re Monolithic Power Sys., Inc.*, 50 F.4th 157, 160 (Fed. Cir. 2022)).

[2] *Adaptive Spectrum and Signal Alignment, Inc. v. Charter Comms., Inc.*, et al, 2-24-cv-00124-JRG (E.D. Tex.); *Iarnach Techs. Ltd. v. Charter Comms., Inc.*, et al, 2-24-cv-00230-JRD (E.D. Tex.); *Patent Armory Inc. v. Charter Comms., Inc.*, 2:24-cv-00237-JRG (E.D. Tex.) (dismissed the day after it was filed).

sued improperly in both the Eastern[3] and Western Districts[4]—a total of eight times in a three-year span. Continued application of the district court's standard will invite countless more suits against CCI in this district and elsewhere that ignore the venue statute and disregard corporate separateness. Furthermore, under the district court's standard, nearly any other corporation with a subsidiary that operates in a venue will be subject to jurisdiction there regardless of whether it respects the corporate forms. CCI, CCO, and other defendants should not be forced to litigate in an incorrect forum all the way through trial to have this issue heard by the Federal Circuit.

The district court adopted its prior ruling from the *Entropic* case that venue was proper for CCI and issued a new ruling that venue is also proper for CCO based on its finding that "Charter" "operates as a single enterprise." Appx9. CCI and CCO, however, do not have any facilities in the State of Texas, have no employees there and no operations. CCI is a holding company—not an operating company—is not incorporated in Texas, does not own or lease property, does not offer any

---

[3] Entropic brought four cases against CCI which it was also forced to litigate after the district court denied CCI's motions to dismiss for improper venue until those were also settled on December 10, 2023. *See Entropic Comms., LLC v. Charter Comms., Inc.,* 2:22-cv-00125-JRG (E.D. Tex.); *Entropic Comms., LLC v. Charter Comms., Inc.*, 2:23-cv-00050-JRG (E.D. Tex.); *Entropic Comms., LLC v. Charter Comms., Inc.*, 2:23-cv-00051-JRG (E.D. Tex.); *Entropic Comms., LLC v. Charter Comms., Inc.*, 2:23-cv-00052-JRG (E.D. Tex.).

[4] *Valjakka v. Charter Comms., Inc.*, 6-22-cv-00491 (W.D. Tex.); *CommWorks Sols., LLC v. Charter Comms, Inc. et al*, 6-22-cv-00156 (W.D. Tex.); *Hanger Sols. LLC v. Charter Comms., Inc.*, 6-22-cv-00070 (W.D. Tex.); *DataCloud Techs., LLC v. Charter Comms., Inc.*, 6-21-cv-00662 (W.D. Tex.).

3

products or services, and, while it had employees at one time, has not had any employees, including in the district, since at least 2020. It is the ultimate parent over numerous subsidiary limited liability companies ("LLC Subsidiaries"), each of which performs specific business functions in support of the Spectrum brand. Similarly, CCO is a holding company, is not incorporated in Texas, does not own or lease property, does not offer any products or services, and does not have any employees. Spectrum Gulf is a separate and distinct LLC Subsidiary that leases or owns and maintains and operates the 21 locations in the district cited in the First Amended Complaint, and is the LLC Subsidiary that provides internet and video services under the Spectrum brand to customers in the district. Neither CCI or CCO, nor any subsidiaries, market any products or services under CCI or CCO's name. CCI and CCO's corporate records are maintained separate from each other and from the LLC Subsidiaries. Further, CCI maintains all corporate formalities as a parent and as a manager of the LLC Subsidiaries, including Spectrum Gulf, under the Delaware LLC Act. It has not ratified any location in the district as its own, nor are the employees of the LLC Subsidiaries' agents of CCI. CCI and CCO are not subject to venue in the district under 28 U.S.C. § 1400(b).

In the *Entropic* Order which the district court relied on, it ruled that "the appropriate inquiry" to determine whether a "regular and established place of business of a subsidiary to be imputed to a parent" is if CCI and "and its subsidiaries

'act as a single enterprise.'" Appx30, Appx27-Appx28 (quoting *Soverain IP, LLC v. AT&T, Inc.*, 17-cv-0293, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017) *report and recommendation adopted* 2017 WL 6452802 (Dec. 18, 2017)).  It then found "as a factual finding that Charter and its subsidiaries, including [Spectrum Gulf], 'act as a single enterprise' so the actions of its subsidiaries are properly imputed to Charter." Appx30.  In the instant order, the district court found that "Plaintiff has established that venue is proper in this Court with respect to CCI based upon the same reasoning, and much of the same evidence, as explained by the Court in [the] *Entropic* [Order]." Appx8.  Additionally, regarding CCO, the district court found that "Charter advertises and operates as a single enterprise, and CCO plays a significant role within that enterprise" and that "CCO—like CCI—maintains control over Charter subsidiaries in this district—including [CC LLC] and [Spectrum Gulf]—such that the subsidiaries' activities are properly imputed to CCO." Appx9, Appx8.

None of that was proper.  Under *Andra Group, L.P. v. Victoria's Secret Stores, LLC.*, 6 F.4th 1283 (Fed. Cir. 2021), and *Celgene Corporation v. Mylan Pharmaceuticals Inc.*, 17 F.4th 1111 (Fed. Cir. 2021), the district court should have considered the "threshold inquiry" of whether CCI, CCO, and the LLC Subsidiaries "maintained corporate separateness" as dictated in *Andra* and again in *Celgene*, and

the many factors that are required to find a lack of corporate separateness, or alter ego, under Fifth Circuit law. That did not happen here.

This is contrary to this Court's prior decisions and is also contrary to other district court decisions in the Eastern District of Texas and within the Fifth Circuit regarding the application of agency, ratification, and imputation under Section 1400(b). *E.g.*, *Andra*, 6 F.4th at 1288–90 (discussing agency and ratification in context of the parent-subsidiary relationship under *Cray*, finding a parent did not ratify a subsidiary's location where they "work[ed] together in some aspects," maintained a "unified business model," and the parent advertised a place of business or set up an office in the district); *Nat'l Steel Car Ltd. v. The Greenbrier Cos., Inc.*, 19-cv-00721, 2020 WL 42889388, at *2, *3–5 (W.D. Tex. July 27, 2020) (noting courts in the Fifth Circuit apply an alter ego analysis when considering whether to impute the acts of a subsidiary to a parent/defendant under the patent venue statute; the plaintiff did not meet "its heavy burden of showing a sufficient degree of control [] to impute the [] subsidiaries' property to [the parent]"); *Bd. Of Regents v. Medtronic PLC*, 17-cv-0942, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (no lack of corporate separateness or ratification, holding "the use of the common or generic name . . . on the exterior of the building, as well as the press releases announcing the business to be conducted in the district by [subsidiaries], which are separate and distinct corporate entities, are insufficient to establish that venue" is

6

proper); *Soverain*, 2017 WL 5126158, at *1 (rejecting argument that a parent and subsidiary "should be considered a single entity for purposes of [patent] venue" where the parent was a holding company, was a "legally and factually separate corporate entity, distinct from its subsidiaries," and subsidiaries "maintain[] [their] own independent corporate, partnership, or limited liability company status, identity, and structure"); *IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*, 11-cv-0575, 2012 WL 13012617, at *3 (E.D. Tex. Sept. 26, 2012) (rejecting argument that parent-defendant "must control [its subsidiary-LLC that conducts business in this district] because" the parent-defendant manages "its subsidiary" because "the control exerted by [the parent-defendant] is [no] greater than that 'normally associated with common ownership and directorship.'" (citation omitted)).

Now is the time to take this issue up. In the present case, the district court again applied its aberrant interpretation of the venue statute, finding that venue was proper for CCI by adopting the *Entropic* Order and, using the same incorrect interpretation of the venue statute, further finding that venue was proper for CCO solely because its subsidiaries' activities were properly imputed to it. Appx1-Appx11. An issue of this magnitude, which has already arisen repeatedly for Petitioners, and will arise for countless other companies, should be taken up by this Court on mandamus to establish unmistakable boundaries for the proper application of venue to corporate entities operating subsidiaries in a plaintiff's venue of choice.

## IV.   FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED

### A.  CCI and CCO Maintain Corporate Separateness From the LLC Subsidiaries

CCI does not have any business operations of its own.  Appx317.  It is a holding company, not an operating company, and is the ultimate corporate parent of the LLC Subsidiaries that each perform separate, distinct business functions in support of the Spectrum brand.  Appx283-Appx284 (collecting testimony explaining the different functions of various LLC Subsidiaries).  For example, there are different LLC Subsidiaries that provide customers with cable or internet services under the Spectrum brand in separate geographic regions.  Appx317-Appx318.

This means that CCI does not sell any products or provide any services in the district, including the products and services that were accused in *Entropic* and the "Accused Spectrum TV App Functionalities" accused in the instant case.[5]  CCI and CCO are not licensed by the State of Texas to provide the services accused in either case.  Instead, only one LLC is licensed to provide this service in Texas:  Spectrum Gulf.  Appx331.  The Public Utility Commission of Texas requires "any entity that

---

[5] The "Accused Spectrum TV App Functionalities" allegedly "comprise the methods performed through operation of at least the Spectrum set top box ('STB') devices as well as the Spectrum TV mobile applications. The accused products did provide in the past, and continue to provide, functionality and structure that facilitates the controlling of content, such as audio and/or video content, on a content presentation device that loads any one of a plurality of different media players[.]"  App197-Appx198.

proposes to provide cable or video service anywhere in the State of Texas . . . to obtain a SICFA [State-Issued Certificate of Franchise Authority],"[6] and Spectrum Gulf, *not* CCI or CCO, holds a SIFCA.  This reality is reflected in the customer service documentation.  When a customer in the district purchases an internet or video package, the customer accepts terms and conditions with Spectrum Gulf.  Appx323-Appx324, Appx325, Appx337-Appx338, Appx341-Appx342.    The customers are treated as customers of the relevant entity that provides the specific services, such as Spectrum Gulf in Texas.  CCI and CCO are not parties to any of those agreements.  Appx319, Appx325, Appx337-Appx338.

Moreover, CCI does not own or lease the products accused in either case.  Those products are owned by Charter Distribution LLC and leased to the various LLC Subsidiaries, including Spectrum Gulf, for a fee pursuant to lease agreements.  App339.   Spectrum Gulf then leases (or subleases) the products to Spectrum customers for a fee.[7]  App339.  Spectrum Gulf, not CCI or CCO, is the entity that provides or ships devices, such as the products accused in both cases, to customers.  Appx339, Appx346, Appx356-Appx358.

---

[6]    https://www.puc.texas.gov/industry/communications/business/sicfa/sicfa.aspx (last visited July 1, 2024).

[7] CC LLC sets products and service prices, and the individual stores are permitted to operate and set prices within that framework.  Appx339.

Further, CCI and CCO's corporate records are maintained separate from each other and from the LLC Subsidiaries and care is taken to ensure that any actions taken by CCI are separate from those taken by the LLC Subsidiaries. Appx315-Appx316, Appx318, Appx335, Appx343-Appx345. Costs among the LLC Subsidiaries are allocated based on entity accounting and their activities. Appx321, Appx338, Appx343-Appx344. Each LLC Subsidiary operates pursuant to a delegation of authority policy, Appx318, and they act in accordance with their operative formation documents, including governing agreements, and pursuant to the pertinent Delaware statute governing limited liability corporations.

## B. <u>CCI Is the Manager of CCO and the LLC Subsidiaries</u>

Each of the relevant LLC Subsidiaries were set up pursuant to, and in conformity with, the Delaware LLC Act (the "LLC Act"). Appx285-Appx287 (discussing the LLC Act). Under the LLC Act, CCI has been appointed as a manager of the different LLC Subsidiaries (through their respective members) that perform the separate business functions as discussed above. Appx318. Touchstream does not dispute that every action relevant to venue has been taken in accordance with the LLC Act. Appx287.

For example, Spectrum Gulf is an LLC incorporated under the laws of Delaware and is a separate, indirect subsidiary of CCI. Spectrum Gulf provides internet and video (*i.e.*, cable) services under the Spectrum brand to customers in

10

certain regions within the United States, including Texas.   Appx316, Appx321, Appx323, Appx339.   Consistent with the LLC Act, the sole member of Spectrum Gulf appointed CCI as the manager of Spectrum Gulf pursuant to an Amended and Restated Limited Liability Company Agreement.[8]   Appx316, Appx360.   That agreement sets out the "governance" of the LLC and includes the powers and limitations of CCI as a manager.   Appx318, Appx360-Appx363.

That agreement provides, *inter alia*, that CCI, in its role as manager, is ***authorized*** to engage in certain conduct, including to elect or remove Spectrum Gulf board members or to execute or endorse any contract or agreement "***on behalf of [Spectrum Gulf]*** without the consent of any Member or other person."   Appx362 (emphasis added).   Consistent with the LLC Act, the agreement states that "[n]o annual or regular meetings of the Manager or the Members are required."   Appx362; Del. Code Ann. tit. 6, §§ 18-101, *et seq.*; *Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*, 17-cv-2206, 2020 WL 5095499, at *15 (E.D. Pa. Aug. 28, 2020) ("[M]ember meetings are not required by . . . [the LLC Act].").   Further, under the agreement, Spectrum Gulf cannot act unilaterally, and must obtain CCI's consent as the manager for certain business activities.   Appx362-Appx363.

---

[8] The Spectrum Gulf management agreement is between Texas Warner Cable Texas LLC ("TWCT") and Time Warner Cable Enterprises LLC, the sole member of TWCT.   Spectrum Gulf was formerly TWCT.   Appx387.

CCI has also been appointed as the manager of CCO pursuant to a different management agreement.  Appx376.  Under that agreement, "Company Entities," such as Spectrum Gulf for example, "shall ***seek*** the ***advice*** of the Manager regarding the business, properties, operations and activities . . . , ***and subject to the direction, control and general supervision of the Company Entities***, the Manager agrees to provide such advice."  Appx377 (emphases added).  It also provides that CCI, as manager, shall provide "management services," which includes categories that CCI shall provide "advice," or "consultation" or "review" or "recommendations" or "assistance" or "guidance."  Appx377-Appx378.

### C. CCI and CCO Do Not Have Any Employees and Do Not Own or Lease, or Maintain and Operate, Property in the District

CCI and CCO do not have any employees.  Appx351, Appx321-Appx322, Appx327, Appx336.  Rather, CC LLC, a separate and distinct LLC, employs the individuals who work for the LLC Subsidiaries that provide various business functions in support of the Spectrum brand.  Appx321, Appx335.  CC LLC, as the employer, allocates employees to the different LLCs and charges those operating companies, like Spectrum Gulf, for those employees to carry on the Spectrum brand-related business.   Appx335, Appx338, Appx340, Appx342-Appx344, Appx346.  CCI and CCO do not participate, nor are they consulted, in the hiring and firing of CC LLC employees.  Appx350-Appx351, Appx336-Appx337.

12

CCI and CCO also do not own, lease, maintain, or operate any property in the district. Appx353-Appx354, Appx391-Appx392. Instead, all 21 locations identified in the First Amended Complaint are owned or leased by Spectrum Gulf. Appx389. CCI and CCO do not have any employees who work at those locations, nor do they maintain or operate those stores. The CC LLC employees are allocated to Spectrum Gulf to operate the stores on a day-to-day basis. Appx325, Appx339, Appx346. Each LLC Subsidiary, through CC LLC employees, decides the needs of the LLC Subsidiary, such as the amount of products or equipment to lease. Appx346.

### D.  <u>CCO Does Not Control the LLC Subsidiaries' Finances</u>

CCO is a holding company that holds the bank accounts of the LLC Subsidiaries. Appx1181-Appx1182. It is the LLC Subsidiaries, *not* CCO, that draw funds from the accounts. Further, CCO does not decide to allocate funds to the LLC Subsidiaries but instead the entity that makes a purchasing decision makes the decision to draw funds. Appx1182. Finally, there is no intermingling of funds. Through "entity accounting[,] costs and expenses are allocated amongst the various entities" with "ledger entries" that track each entity's fees, costs, and expenses. Appx321, Appx325, Appx1188.

### E.  **CCI and CCO Do Not Reside or Have a Physical Presence in the District**

As the district court recognized in the *Entropic* Order, CCI does not reside in the district because it is a Delaware corporation with its principal place of business

in Connecticut. Appx309-Appx310. While the district court made no mention of CCO's location in the instant order, CCO is also a Delaware corporation with its principal place of business in Connecticut and therefore does not reside in this district. Appx190. Not only do CCI and CCO not have a physical place in the district, but they do not hold themselves out to the public as having a presence in the district or providing services there. Neither CCI nor CCO, nor any subsidiaries, market any products or services under CCI or CCO's name. Appx326. The LLC Subsidiaries use the Spectrum brand "for all customer-facing functions in all retail stores" and any customer-facing employee uses a Spectrum signature block in email correspondence. Appx347, Appx340, Appx325.

To that end, "multiple entities," not including CCI and CCO, are responsible for advertising and marketing of the Spectrum brand, and guidelines for the Spectrum brand is set at a corporate level, *i.e.*, CC LLC, which allocates the costs of advertising and marketing among the operating companies. Appx347. There are also regional marketing departments, not including CCI and CCO, in each geographic sub-region that have the flexibility to "control" the regional advertising and marketing within the guidelines set by corporate. Appx347.

### F.  Procedural History

Touchstream Technologies, Inc. ("Touchstream") commenced this patent infringement action in the district against Petitioners on February 16, 2023, alleging

infringement of one patent related to the Accused Spectrum TV App Functionalities. Appx32-Appx70. The case was subsequently consolidated with two others filed by Touchstream for all pretrial issues. On May 8, 2023, Petitioners filed a motion to dismiss the complaint for improper venue as it relates to CCI and CCO under Rule 12(b)(3) of the Federal Rules of Civil Procedure. Appx71-Appx188. On May 25, 2023, Touchstream filed a First Amended Complaint that added two new patents. Appx189-Appx270. On June 23, 2023, Petitioners filed a motion to dismiss the First Amended Complaint for improper venue as it relates to CCI and CCO under Rule 12(b)(3). Appx271-Appx392. In response to a joint motion by the parties, the district court stayed all venue discovery deadlines and corresponding deadlines for responses until five days after this Court issued an order on CCI's petition for writ of mandamus in *Entropic*. This Court denied CCI's petition on September 5, 2023. *In re Charter*, 2023 WL 5688812, at *2. On October 18, 2023, the district court issued an order allowing additional venue discovery and outlining the briefing timeline for Petitioners' motion. The motion was fully briefed by March 25, 2024 (Appx271-Appx392; Appx393-Appx1156; Appx1157-Appx1316; Appx1318-Appx1330), and the district court issued the order at issue here on May 2, 2024[9] (Appx1-Appx11). The district court did not stay the case, and the parties continue

---

[9] Petitioners do not seek mandamus on the portion of the order granting-in-part their motion to dismiss for failure to state a claim for willful infringement. Appx10-Appx11.

to engage in discovery.  The *Markman* hearing occurred on May 30, 2024.  Jury selection is scheduled for October 28, 2024.

## V.    REASONS THE WRIT SHOULD ISSUE

A writ of mandamus is appropriate when (1) the "right to issuance of the writ is clear and indisputable"; (2) the petitioner has "no other adequate means to attain the relief" desired; and (3) the writ is "appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations and quotation marks omitted).  "[M]andamus can be an appropriate means for the appellate court to correct a district court's answers to 'basic, undecided' legal questions," including "in the venue context."  *In re Micron Tech. Inc.*, 875 F.3d 1091, 1095 (Fed. Cir. 2017) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964)).

### A.  The Right to a Writ Is Clear and Indisputable

Venue in patent cases is exclusively governed by § 1400(b), which provides that venue is proper either (1) in the district in which the defendant resides, or (2) where it has a regular and established place of business and has committed acts of infringement.  28 U.S.C. § 1400(b).  Under § 1400(b), a "regular and established place of business" must be (1) "a physical place in the district"; (2) "regular and established"; and (3) "the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

16

**1. The District Court Relied on an Erroneous Standard and Erroneous Factual Findings to Impute the Presence of Spectrum Gulf to CCI and CCO**

In the *Entropic* Order, the district court considered "the concept of imputation" as "an alternative to the evidence of ratification" under the third *Cray* factor to conclude *both* that (1) the actions of the LLC Subsidiaries are "properly imputed to [CCI]"; and (2) the four Spectrum Gulf locations listed in the Entropic complaint are of CCI "under a lack of corporate separateness theory." Appx30. In the instant order, the district court adopted its rationale in the *Entropic* Order when it found that "the in-district activities of CCL and SGC 'may be properly imputed to'" CCO and concluded that "the same rationale for finding that venue is proper for CCI applies equally for CCO" and that venue is proper for CCO. Appx9. The district court committed legal and factual errors in reaching these conclusions.

<u>*First*</u>, in the *Entropic* Order, the district court stated that it made a "factual finding" regarding imputation, implying that this is a factual question rather than a legal analysis. Appx29-Appx30. However, it reached its conclusion by relying on an erroneous legal standard. It explained that the "appropriate inquiry" is whether CCI "and its subsidiaries 'act as a single enterprise,'" notwithstanding its acknowledgement that corporations "may be treated as one for purposes of venue" if "the corporations disregard their corporate separateness ***and*** act as a single enterprise[.]" Appx27-Appx28, Appx30 (emphasis added) (quoting *Soverain*, 2017

WL 5126158, at *1).  Against this legal standard, the district court concluded in the *Entropic* Order that it could impute the presence of the LLC Subsidiaries to CCI because they "act as a single enterprise."  Appx30.  Regarding CCO, in the instant order, using the same erroneous legal standard the district court found "that CCO— like CCI—maintains control over Charter subsidiaries in this district—including CCL and SGC—such that the subsidiaries' activities are properly imputed to CCO." Appx8.

That is not the "appropriate inquiry."  This Court held that the "threshold inquiry when determining whether the place of business of one company can be imputed to another, related company is whether they have maintained corporate separateness."  *Andra*, 6 F.4th at 1289.  "If corporate separateness has not been maintained, the place of business of one corporation may be imputed to the other for venue purposes."  *Id.*; *Celgene*, 17 F.4th at 1125; *Soverain*, 2017 WL 5126158, at *1.  But, "[s]o long as a formal separation of the entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other."  *Id.* (quoting Fed. Prac. & Proc. § 3823 & nn.24–26).

Here, the district court abused its discretion because it (1) *only* considered whether CCI and CCO each acted as a "single enterprise" when deciding to impute the conduct of the LLC Subsidiaries to CCI and CCO, and (2) disregarded any inquiry of whether corporate separateness was maintained and misapplied the law to

the facts because it did not consider any of the factors that are relevant to corporate separateness under Fifth Circuit law. *See Nat'l Steel*, 2020 WL 4289388, at *2 (delineating a "non-exhaustive list of factors courts may consider" when deciding whether to impute the property of a subsidiary to the parent under an alter ego theory). Without any support, the district court established a new standard—proving a "single enterprise" is alone sufficient to find a lack of corporate separateness—that overrides the factors courts must consider when determining the application of the alter ego doctrine, *i.e.*, lack of corporate separateness.

*Second*, the district court made "factual findings" under this "single enterprise" standard that are contrary to the law governing lack of corporate separateness. Specifically, in the *Entropic* Order the district court found that CCI "unabashedly holds itself out to the world as a single enterprise" through federal filings, marketing, testimony that the LLC Subsidiaries are "legal formalities" (which it "confirm[ed]" because employees are staffed through a single entity), and because CCI "signs all contracts and documents on behalf of its subsidiaries." Appx30. In the instant order, the district court also found the same for CCO finding that "[a]s the Court found in *Entropic* with respect to CCI, the in-district activities of CCL and SGC 'may be properly imputed to' CCO." Appx9. These "factual findings" conflict with the well-established propositions that: (1) a "subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate

separateness," even "if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose" and there exists an "interdependence" between the entities, *Soverain*, 2017 WL 5126158, at *1 (citations omitted); (2) to establish a lack of corporate separateness, "there must be a 'plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family,'" *Interactive Toybox, LLC v. Walt Disney Co.*, 1:17-CV-1137-RP, 2018 WL 5284625, at *3 (W.D. Tex. Oct. 24, 2018); (3) "[e]ven 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations," *Id.* (citation omitted); *Celgene*, 17 F.4th at 1126; and (4) corporate separateness is maintained even where there is "shared marketing, branding, and trade names" as well as a parent's involvement in alleged infringing conduct or in signing lease documents, *id.*[10]

Regarding CCI, in the *Entropic* Order, the district court relied on erroneous factual findings because it ignored that in each of the "filings" relied upon by Entropic, and thus by the district court[11], CCI explained that services are provided

---

[10] Although *Celgene* was decided under Third Circuit law, the law on corporate separateness is similar to that under Fifth Circuit law.

[11] In its decision, the district court predominately cites to Entropic's opposition brief as factual support for its conclusions. At times, however, Entropic's recitation (and consequently the district court's recitation) of the facts contradict the record. *Compare* Appx25 (citing Entropic's opposition brief and stating a corporate officer stated the existence of the subsidiaries is a "***mere*** formality" (emphasis added)), *with*

through the LLC Subsidiaries. *Compare* Appx30, *with* Appx1412 (explaining that the "filings" are consistent with the corporate forms, including Appx1391, an annual report noting that "'Charter,' 'we,' 'us' and 'our' refer to [CCI *and its subsidiaries*." (emphasis added)). Moreover, the district court relied on Entropic's references to federal filings in 2011 and 2014. Appx30. The district court ignored arguments that those filings were well *before* 2022, the year Entropic commenced this action, and well *before* the time that CCI owned any Time Warner Cable entities, including Spectrum Gulf,[12] and ignored that "[v]enue is determined by the facts and situation as of the date suit is filed." *Parallel Network Licensing LLC v. Arrow Elecs., Inc.*, 21-cv-0714, 2022 WL 1597364, at *3 (E.D. Tex. May 19, 2022).

Further, in the *Entropic* Order, the district court also found that imputation was proper based on managerial duties under the LLC Act and the Spectrum Gulf management agreement, *i.e.*, because CCI "signs all contracts and documents" on behalf of the LLC Subsidiaries. Appx30; Appx28-Appx29. The district court effectively held that a manager that acts on behalf of an LLC is one and the same with the LLC it manages. Yet, it did not cite any authority for this proposition, made no mention of the LLC Act, and did not analyze whether the corporate forms were

---

Appx1376 (explaining corporate governance as expressed in management agreements is a "*legal* formality" (emphasis added)).

[12] https://ir.charter.com/news-releases/news-releasedetails/charter-communications-merge-time-warner-cable-and-acquire (last visited July 1, 2024).

maintained. *But see IPVX Patent*, 2012 WL 13012617, at *3 (considering alter ego argument in a similar context, and rejecting argument that a parent/manager "controlled" the subsidiary/managed entity, concluding "there is no evidence that the control exerted by [the parent-defendant] is greater than that 'normally associated with common ownership and directorship.'" (citation omitted)).

In the *Entropic* Order, the district court also discredited direct evidence that CCI signed lease agreements *consistent* with the corporate forms, in line with the "legal formalit[ies]," as the duly appointed manager of Spectrum Gulf under the LLC Act and the management agreement, and *not* for itself. For example, the management agreement and Delaware law provide that CCI as the "Manager" of Spectrum Gulf exercises "the powers of the Company [Spectrum Gulf]," and not CCI. Appx426; Del. Code Ann. tit. 6, § 18-402. The Spectrum Gulf management agreement authorizes CCI to "execute or endorse" agreements or contracts "***on behalf of***" Spectrum Gulf. Appx362 (emphasis added). And, this contractual relationship alone is insufficient to prove imputation. *IPVX Patent*, 2012 WL 13012617, at *3.

Turing to the instant order, regarding CCO, the district court found that "CCO performs many activities that support its control over Charter subsidiaries in this district, thereby supporting venue." Appx8. In doing so, the district court made erroneous factual findings. First, the district court adopted Touchstream's argument

and found that CCO uses CC LLC employees. Appx8. This not true. CC LLC—not CCO—allocates employees or services to the different LLC Subsidiaries; and the operating companies, like Spectrum Gulf, must pay CC LLC for those services. Appx321, Appx335, Appx338, Appx342-Appx344. Further, while CC LLC employees decide which contracts to execute or vendors to engage on behalf of the various entities, CCO is a signing entity in scenarios ***only*** where "more than one entity . . . will be providing the service." Appx1312-Appx1313, Appx1178, Appx1189.

Next, contrary to the district court's adoption of Touchstream's argument that "CCO holds and controls funds for all Charter entities," CCO does not have financial control over the LLC Subsidiaries. Appx9. CCO is a holding company that holds the bank accounts of the LLC Subsidiaries, and these subsidiaries, not CCO, draw funds from the accounts. Appx1181-Appx1182. Nor does CCO decide to allocate funds to the LLC Subsidiaries, instead, the LLC Subsidiary that makes the purchasing decision would decide to draw funds. Appx1182. Further, the funds are not intermingled between CCO and the LLC Subsidiaries. Through "entity accounting[,] costs and expenses are allocated amongst the various entities" with "ledger entries" that track each entity's fees, costs, and expenses. Appx321, Appx325, Appx1188. Based on this, there is simply no evidence for the district court to find that CCO exerts financial control over the LLC Subsidiaries.

Further, the district court relied on the fact that "CCI, CCO, and [Spectrum Gulf] all share the same twenty-four executive officers," Appx9, ignoring that "commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations," *Interactive Toybox*, 2018 WL 5284625, at *3 (citation omitted).

Finally, the district court found that "CCO, like CCI, uses the Spectrum brand." Appx9. However, corporate separateness is maintained even where there is "shared marketing, branding, and trade names." *Celgene*, 17 F.4th at 1126. None of these facts considered alone or together demonstrate a lack of corporate separateness.

*Third*, as part of its alleged "fact finding" for CCI, in the *Entropic* Order, the district court found that the Spectrum Gulf locations in the district are "of the defendant," the third *Cray* factor, under a "lack of corporate separateness theory." Appx30. However, the district court did not engage in a lack of corporate separateness analysis. Nor did it explain how it could find a lack of corporate separateness under the third *Cray* factor, and not under the others. If it is true that CCI and the subsidiaries "act as a single enterprise" and "lack corporate separateness"—and it is not—that finding alone should have started and ended the venue analysis because "the place of business of one corporation may be imputed to

the other for venue purposes" only where "corporate separateness has not been maintained." *Andra*, 6. F.4th at 1289.

The district court has now erred for a second time in finding venue proper for CCI and CCO. In doing so, the district court clearly abused its discretion because it reached erroneous results based on erroneous factual findings, conclusions of law, and because it misapplied the law to the facts.

## B. The Other Mandamus Factors Are Satisfied

CCI and CCO have no other adequate means to attain the relief sought because they will be forced to litigate in an improper venue, and "the harm . . . will already have been done by the time the case is tried and appealed[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008). And, "[w]hile not alone sufficient to justify mandamus, the substantial expense to the parties that would result from an erroneous district court decision" regarding venue "confirms the inadequacy of appeal in this case." *In re Google LLC*, 949 F.3d 1338, 1342–43 (Fed. Cir. 2020).

Further, CCI has already been forced to litigate *Entropic* to the eve of trial in the district. In addition to the instant case, CCI currently has three other patent infringement lawsuits pending against it in the district—two of which CCO is also a defendant. Without mandamus, the district court's decision will be binding which will result in CCI and CCO litigating three more cases through appeal. Relief is

warranted to clarify the legal standards and factual findings erroneously recited and applied by the district court here. *Cray*, 871 F.3d at 1359.

Granting mandamus in this case will also ensure uniformity among district courts and will clarify and correct the application of the patent venue statute as it relates to the parent-subsidiary relationship and where the corporate forms remain intact. As illustrated by the district court's findings regarding CCO, the district court will continue to apply its incorrect interpretation of the venue statue which will subject more parent corporations to litigation in *any* district in which a subsidiary or related company has operations, even where the corporate forms are maintained.

## VI.    <u>CONCLUSION</u>

For these reasons, Petitioners respectfully request that this Court issue a writ of mandamus directing the district court to dismiss this case for improper venue as to CCI and CCO.

Dated:      July 1, 2024                    Respectfully submitted,

                                            */s/  Daniel Reisner*
                                            Daniel Reisner
                                            Elizabeth A. Long
                                            ARNOLD & PORTER KAYE SCHOLER LLP
                                            250 West 55th Street
                                            New York, New York, 10019-9710
                                            Telephone: (212) 836-8000

                                            *Attorneys for Petitioners*
                                            *Charter Communications, Inc., Charter*
                                            *Communications Operating, LLC, Time Warner*
                                            *Cable Enterprises LLC, Spectrum Management*
                                            *Holding Company, LLC, Spectrum Gulf Coast,*
                                            *LLC, and Charter Communications, LLC*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** _____

**Short Case Caption:** In re Charter Communications, Inc. et al

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑   the filing has been prepared using a proportionally-spaced typeface and includes _6250_ words.

☐   the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐   the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: _07/01/2024_

Signature: /s/ Daniel Reisner

Name: Daniel Reisner

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 1, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

I further certify that on July 1, 2024, I caused a copy of the foregoing to be served on the following counsel of record and district court judge by Federal Express and by electronic mail at the following addresses:

Robert H. Reckers
Anita Liu
Andrew M. Long
**Shook Hardy & Bacon LLP**
JPMorgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002-2926
Tel.: (703) 227-8008
rreckers@shb.com
aliu@shb.com
amlong@shb.com

Ryan D. Dykal
Jordan T. Bergsten
Mark D. Schafer
**Boies Schiller Flexner, LLP**
1401 New York Avenue, NW
Washington, DC 20005
Tel.: (202) 274-1109
rdykal@bsfllp.com
jbergsten@bsfllp.com
mschafer@bsfllp.com

Philip Eckert
Evan James Weidner
**Shook, Hardy & Bacon LLP**
2555 Grand Boulevard
Kansas City, MO 64108
Tel.: (816) 421-5547
peckert@shb.com
eweidner@shb.com

Melissa Richards Smith
**Gillam & Smith, LLP**
303 South Washington Avenue
Marshall, TX 75670
Tel.: (903) 934-8450
melissa@gillamsmithlaw.com

*Counsel for Plaintiff-Respondent Touchstream Technologies, Inc.*

i

Hon. Rodney Gilstrap
U.S.D.C. – Eastern District of Texas
Sam B. Hall, Jr. Federal Building and
United States Courthouse
100 East Houston Street
Marshall, Texas 75670
Tel.: (903) 935-3868
Fax: (903) 935-2295


Dated: July 1, 2024                              */s/ Daniel Reisner*